**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **NO. 5:25-CR-00127-GFVT-MAS-6** |
| **DEANGELO MONTAVIOUS BOONE,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION & ORDER**

The matter before the Court poses several challenging questions: How much weight should a court afford evidence of uncharged violent conduct in its detention or release analysis? And for how long? Can a gang member reform after one year? Three? Or does it take longer? Does compliant behavior inside a jail predict compliance with court-imposed release conditions? How much weight does the Court give these factors when the crime alleged is brokering the murder of a federal witness?

The Court grapples with these questions below and determines that even with new and material evidence that weighs in his favor, the United States has proven by clear and convincing evidence that Defendant Deangelo Montavious Boone is a risk of danger to the community that no combination of conditions can mitigate, and his pretrial detention must be continued.

# I. ANALYSIS

## A. PROCEDURAL HISTORY

The Court held a detention hearing on October 20, 2025, and entered a Memorandum Opinion and Order detaining Boone ten days later. [DE 76]. The Court found Boone was a unmitigable risk of danger. This Opinion adopts and incorporates the analysis from the October 2025 decision. Boone's history and characteristics are detailed there. The history and criminal activities of the Hot Boyz is well-documented throughout this case. Neither will be repeated in this Opinion.

In part, the October 2025 decision relied on pending state charges from December 2020 in its detention analysis. Boone moved to reopen the hearing because those charges were later dismissed. [DE 288]. The Court granted that request and scheduled a detention hearing on October 5, 2026. [DE 291]. The limited purpose of the October 5, 2026, hearing was to examine new information not available to the parties at the first hearing a year earlier.

The new evidence weighs on Boone's history and characteristics, as well as the nature and circumstances of the risk he would pose if released. The Court weighs the new evidence with all the evidence previously considered in its opinion at DE 76 in reaching its ultimate decision to continue detaining Boone pretrial. In making this determination, the Court primarily considered the impact of the dismissed criminal charges on Boone's overall dangerousness. The Court also considered Boone's conduct while detained during the past year and his proposed release conditions.

The United States attempted to introduce information and proffer related to evidence that was not new or unknown to them in October 2025. The United States,

over Boone's sustained objection, continued to reference alleged criminal conduct by Boone that was known to it in October 2025 but not made part of the prior detention hearing. The Court did not consider this information in its analysis. If the United States had evidence of criminal conduct available to it in October 2025 that it wanted the Court to consider in making its detention or release decision, it should have introduced it at that time. If the United States made a strategic decision not to introduce that evidence, it is stuck with that decision.

### B. THE DECEMBER 2020 CHARGES

As the Court outlined in its prior detention opinion, and as testified to by FBI Special Agent Isaac Robison, Boone was arrested on December 28, 2020, with Daquis Sharp (fellow member of the Hot Boyz and codefendant in this case) and Quincy Gay (Hot Boyz associate). Ja'Quis Ray, brother of Daquis Sharp, was murdered earlier the same day on Woodhill Drive in Lexington. Robison testified at both hearings as to the events that transpired next. Law enforcement was aware of the connection between Sharp, Gay, and Boone. Law enforcement was separately called to North Mt. Tabor Road, where they observed Gay with what appeared to be a firearm. Gay entered a vehicle Boone was driving and the three fled from law enforcement. Eventually, the vehicle hit a curb and the men fled on foot. Boone and Sharp were found hiding the ceiling of an office building, where they were taken into custody. Officers found several firearms in the vehicle Boone was operating. Boone was charged with fleeing/evading on foot, fleeing/evading in a motor vehicle, burglary in the 3rd degree, leaving the scene of an accident, possession of marijuana, failure to

maintain insurance, and operating on a suspended license. Boone did not dispute these facts.

These charges remained pending against Boone until November 21, 2025, when all the state charges against him were dismissed without prejudice. [DE 288-3]. The Order Dismissing reflects only that they were dismissed for the "reasons stated on the record." [DE 288-3]. At the October 5, 2026, hearing, Robison testified that the Commonwealth Attorney's Office told him it dismissed the state charges "due to the severity of the federal charges." [DE 298, Recording at 11:45-50]. The United States stressed that there was no indication the state charges were dismissed for want of proof; Boone stressed there was no indication of any reason at all why the state charges were dismissed other than what Robison said he heard.

The United States repeatedly pointed to Boone's alleged conduct, outlined above, rather than the charges themselves to demonstrate dangerousness. The Court agrees that fleeing from law enforcement in a car with multiple firearms, breaking into an office building, and hiding is troublesome behavior. To the extent the United States desired to connect Boone's conduct to Ray's murder, it was unable to do so.[1] On cross-examination, Robison acknowledged Gay, Boone, and Sharp were first spotted some distance from where the murder occurred, and law enforcement did not

[1] Robison testified that "law enforcement believes that Mr. Boone, Mr. Sharp, and Mr. Gay were obviously upset by Mr. Ray's murder and were therefore searching for anyone who may have been involved in his murder, which would be why they had three firearms in the vehicle." [DE 298, Recording at 20:04-24]. Other than the fact that Sharp and Ray were related, the United States offered no facts to support its vigilante justice theory.

know whether any of those men even knew of Ray's murder at that time. Robison further acknowledged that while Sharp was convicted of his charges arising out of this incident, Gay was acquitted. An unrelated individual was later indicted for the murder of Ray.

The dismissal of the state charges against Boone changed the Court's danger calculus, but not enough. True, without the pending state charges, Boone's only convictions are traffic violation and a misdemeanor charge for possession of marijuana. [Pretrial Services Report 3-6]. The dismissed charge lowers Boone's dangerousness, but not substantially. Boone's prior affiliation with the Hot Boyz, his involvement in the attempted shooting of T.F., allegations of a sexual assault that resulted in a protective order against him, the Radcliff Road shooting, and the fleeing incident in December 2020, evince potentially serious, and sometimes violent conduct, even if criminal convictions did not result. The Court's analysis from its October 2025 detention opinion remains unchanged.

Additionally, the nature and circumstances of the crime have not changed. The Court's prior analysis was clear. Alleged involvement in the contract killing of a federal witness is as dangerous of a crime as this Court encounters. Reading all of this together, the Court finds the United States' evidence of Boone's dangerousness remains clear and convincing.

### C. GOOD BEHAVIOR AND RELEASE CONDITIONS

Boone offered two other pieces of evidence to counter the United States' narrative of dangerousness: first, he proffered his good behavior while incarcerated over the past year. Second, he offered updated release conditions, which included

living at the residence of Latasha Harper, his girlfriend's mother with his girlfriend and their children. The United States objected to both pieces of evidence. As to the former, the United States argued that good behavior while incarcerated should be afforded no weight, as it reflected not a rehabilitated individual but someone who was merely aware he was being monitored. While this is one possibility, another possibility is that Boone has, in fact, reformed from his past life as a gang member.

As to Boone's proposed release conditions, the United States argued that Boone could have proposed Harper's home as a residence in October 2025, but he did not do so and should not be allowed to bring in "new evidence" at this time. The Court agrees that simply altering proposed release conditions after the initial detention hearing would not be "new and material" evidence required by the BRA to reopen a hearing if they were potentially available and known to the defendant at the time of the detention hearing. However, that was not the case here. In this instance, the Court reopened the hearing based on the new and material evidence of a dismissed state charge. The BRA requires the Court to "hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community[.]" 18 U.S.C. 3142(f). That section also permits reopening the detention hearing. Essentially, even if the United States proves a defendant is a danger, he must be a danger that conditions cannot mitigate to justify detention. And the Court cannot ascertain this without allowing a defendant to put on proof of release conditions. When a detention hearing is reopened after the passage of months or years, it would

be unfair to hold a defendant to the circumstances and residence he pledged as appropriate and available months before. Lives changes; people move, lose their jobs, become ill, return to school, even die. The Court must offer a defendant the flexibility to update his release conditions if a hearing is reopened; however, as noted above, updated release conditions will not justify reopening a hearing except for the unusual situation in which a defendant can show those conditions are new, material, and were unknown to him at the time of the original hearing.

Boone's proposed conditions are reasonable and would serve to reduce the danger he poses to some extent, but not sufficiently to satisfy the Court. The evidence of Boone's violent and criminal conduct, even if uncharged, is strong. The evidence of Boone's gang affiliation, even if abandoned, is strong. And the Court once again recalls the seriousness of the charges against Boone. While Harper's residence appears stable and secure, it does not adequately mitigate the risk that Boone would engage in criminal conduct, connect with co-defendants or Hot Boyz associates, or obstruct justice.

## II. CONCLUSION

The Court finds that the new and material evidence of Boone's dismissed state charges does not change the analysis enough to release him. The United States again met its burden of clear and convincing evidence that Boone is an unmitigable danger to the community or others. The hearing addressed only danger. The Court previously found the United States did not meet its burden of preponderance of the evidence that Boone poses a risk of nonappearance.

For the reasons stated above, **IT IS ORDERED** that Boone shall continue his pretrial detention.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Signed this the 21st of October, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY